### IN THE UNITED STATES DISTRICT COURT FOR THE
### MIDDLE DISTRICT OF ALABAMA
### EASTERN  DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CASE NO: 3:06-CR-54-MEF |
| | ) | |
| SALLEY WHALEY HOGAN | ) | |

### MOTION TO SUPPRESS AND CITATIONS OF AUTHORITY

The Defendant, Salley W. Hogan, by and through undersigned counsel, Christine Freeman, and pursuant to the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, moves this Court for an Order suppressing all evidence and all statements seized as a result of the following described stop, search and/or seizure on or about November 23, 2004, in Lafayette, Alabama, in the Middle District of Alabama.

This evidence to be suppressed includes, but is not limited to,: (a) any and all physical evidence seized from the blue jean purse of Ms. Hogan; (b) any and all evidence seized from the 1992 Mazda Protégé driven by Balinda B. Saylor; ( c) any and all items seized from Ms. Saylor or Ms. Hogan; (d) any and all statements made by Ms. Hogan during and after any stop, search and/or seizure of the Mazda and/or after Ms. Hogan's arrest; and (e) any and all evidence obtained as a result or "fruit" of any such search,  seizure, and/or statements.

### Facts

At an evidentiary hearing, the following facts would be established:

1.      On the morning of November 23, 2004, the 1992 Mazda Protégé being driven by Balinda B. Saylor was pulled over and stopped  by Lafayette City Police Officer Jerome

Bailey.  At the time of the stop, Ms. Hogan was riding in the passenger side of the vehicle.

On information and belief, the car was stopped at or near the location of law enforcement

offices.

    2.    The vehicle was in good condition and had no visible safety code violations

or mechanical defects.   The vehicle was neither speeding nor driving erratically at the time

of the stop.[1]   Additionally, there was no sign of contraband in plain view within the vehicle.

    3.    In response to direction from Officer Bailey, both Ms. Saylor and Ms. Hogan

left the car and stood outside it.

    4.    Officer Bailey "ran both subjects names through NCIC for warrants checks and

found that Hogan was on probation . . . for poss/rec of a controlled substance."

    5.    Officer Bailey observed two medicine bottles "inside the open dash board" of

the car; on information and belief, both bottles were clearly labeled with pharmacy labels

indicating they contained prescription medicine issued by a physician to Ms. Saylor.

    6.    Officer Bailey issued a warning citation to Ms. Saylor for "Turn Signal

Required."

    7.    After issuing the warning citation to Ms. Saylor, Officer Bailey asked Ms.

Saylor "about the medication bottles inside the dash board and on the floor near the driver

---

[1]Officer Bailey's report states that Ms. Baylor was stopped "for not giving a left turn signal."  As noted, Officer Bailey  issued a Traffic Violation Warning to Ms. Baylor for "Turn Signal Required."  On information and belief, defendant will present proof at an evidentiary hearing on this motion that Officer Bailey made statements acknowledging a different, improper basis for the traffic stop, unrelated to any alleged traffic violation.

seat" and Ms. Saylor stated that the medicines were hers. As noted above, on information and belief, the medicine bottles were clearly marked with Ms. Saylor's name.

8.    After issuing the warning citation to Ms. Saylor, Officer Bailey asked Ms. Saylor for written consent to search the vehicle. A signed consent form has been provided by the government to defense counsel. Apparently, no contraband was discovered during the search of the car: no information has been provided to defense counsel indicating any evidence of criminal activity was found, identified or seized from the car.

9.    On information and belief, a blue jean purse was identified to Officer Bailey as belonging to Ms. Hogan; Officer Bailey removed Ms. Hogan's purse from the vehicle and placed it on the outside of the vehicle, away from Ms. Hogan.

10.    On information and belief, Officer Bailey questioned Ms. Saylor and Ms. Hogan without providing *Miranda* warnings.

11.    Officer Bailey obtained a statement from Ms. Hogan that there was a handgun inside her purse.

12.    Without obtaining consent from Ms. Hogan, Officer Bailey searched her purse and removed a 22 caliber Derringer, holster, and four bullets.

13.    Officer Bailey contacted Ms. Hogan's probation officer. The probation officer came to the site of the traffic stop, questioned Ms. Hogan, and arrested Ms. Hogan. Ms. Hogan was taken to jail in Chambers County.

14.    Once she was in the Chambers County Detention Facility, Ms. Hogan was

asked to and did sign an alleged "waiver of rights" form and initialed a written statement which affirmed her possession of the firearm and other factual assertions.

15.    The information obtained pursuant to the above is due to be suppressed because:

a.    The initial traffic stop was without probable cause, in violation of the Fourth Amendment right to be free from unreasonable seizures and searches;

b.    The initial traffic stop was pretextual, in violation of the U.S. Constitution's rights to due process and equal protection.

c.    The continued detention of Ms. Saylor and Ms. Hogan following completion of the written traffic warning was without probable cause, in violation of the Fourth Amendment.

d.    The interrogations of Ms. Saylor and Ms. Hogan violated their rights under the Fifth and Sixth Amendments to be free of coercive interrogation and did not result from knowing or voluntary waivers of their rights to silence and to counsel, under the Fifth and Sixth Amendments.

e.    The search of Ms. Hogan's purse was without warrant, without probable cause, and without valid authority or consent, in violation of the Fourth Amendment.

f.    The second and third interrogation of Ms. Hogan violated her rights under the Fifth and Sixth Amendments to be free of coercive interrogation, did not result from knowing or voluntary waivers of her rights to silence and to counsel under the Fifth

4

and Sixth Amendments, and were the fruit of the illegal prior searches and illegal prior interrogations, in violation of the Fourth, Fifth and Sixth Amendments.

## Law

The Fourth Amendment protects individuals from unreasonable searches and seizures. Const. Amend IV.   "A traffic stop is a seizure within the meaning of the Fourth Amendment." *U.S. v. Purcell*, 2236 F. 3rd 1274 (11th Cir. 2001).  The legality of traffic stops is analyzed under the standards articulated in *Terry v. Ohio*, 392, U.S. 1, 88 S.Ct. 1868 (1968)." *Id.* at 1277 (citations omitted).

In *United States v. Pruitt*, 174 F. 3rd 1215 (11th Cir. 1999), the Eleventh Circuit addressed the implication of the Fourth Amendment in a routine traffic stop and the application of the *Terry* standard.  That standard requires that there be more than an "inchoate hunch" as the basis for the traffic stop.

The Fifth and Fourteenth Amendment rights to due process and to equal protection prohibit selective enforcement of any laws based on the status of an individual, unrelated to probable cause to believe a violation of the law occurred.  See *Wren v. United States*, 517 U.S. 806, 116 S. Ct. 1769 (1996).   See also, *Pruitt, supra*, 174 F.3d at 1221 ("being Mexican, having few pieces of luggage, being visibly nervous or shaken during a confrontation with a state trooper, or traveling on the interstate with Texas license plates (not yet a crime in Alabama), do not provide a minimal, particularized basis for a conclusion of reasonable suspicion on the part of [the officer]."

5

In addition, the Fourth Amendment prohibits continued detention of a vehicle and its occupants, once the traffic purpose of the stop has been completed, unless the traffic officer can point to "'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.'" *Pruitt,* at 1219 (citations omitted); *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990).

In *Pruitt*, the Court held that the detention and subsequent search of the defendants vehicle violated their Fourth Amendment rights. Specifically, the Court found that the questioning during the traffic stop for an alleged speeding violation should have been limited to questions regarding the driver's "license, registration and insurance papers." *Id.* at 1220. The Court found that there was no basis for a suspicion of criminal activity and therefore, additional questioning was irrelevant and a violation of *Terry*. *Id.*

Thus, in this case, even if Officer Bailey had a valid basis for the initial traffic stop, there was no basis to prolong the stop after the warning citation had been issued.

A defendant whose physical location is controlled by the police is in custody. *U.S. v. Grant*, 920 F.2d 376, 382 (6th Cir. 1991). Where a defendant has been interrogated while in custody, the prosecution may not use statements stemming from that interrogation "unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612 (1966). The prosecutor carries the burden to prove by a preponderance of the evidence that a valid waiver was obtained. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). The government

6

must show (1) "that the waiver was made in full awareness of the nature of the right being waived and the consequences of waiving," and (2) "that the waiver was voluntary in the sense that it was a product of free and deliberate choice rather than intimidation, coercion, or deception" based upon the totality of the circumstances. *United States v. Hernandez*, 93 F.3d 1493, 1501 (10th Cir.1996) (citing *Colorado v. Connelly*, 479 U.S. 157, 169- 70 (1986)).

In this case, the government's own reports indicate that Ms. Hogan was not provided with *Miranda* warnings until after the improper seizures of her person and purse and after her initial interrogation and the obtaining of certain inculpatory statements.

In addition, the government may not use statements obtained involuntarily from a defendant. Physically "coercive factors, such as physical abuse or threats of physical violence, need not be present to support a determination of involuntariness." *Wainwright v. LaSalle*, 414 F.2d 1235, 1239 (5th Cir. 1969). In analyzing whether a defendant's will was overborne by the circumstances surrounding the giving of a confession, this Court must review the totality of the circumstances of the interrogation. *Dickerson v. United States*, 530 U.S. 428, 434, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (internal quotations and citation omitted). 18 U.S.C. § 3501(b) also requires that the following factors be considered:

> (1) [T]he time elapsing between arrest and arraignment of the defendant making the confession, ... (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without

the assistance of counsel when questioned and when giving such confession.

18 U.S.C. § 3501(b).

Police officers may not search a car without a search warrant and/or inspect passengers' belongings found in the car unless they have probable cause to believe the car contains contraband and probable cause to believe the belongings in the car are capable of concealing the object of the search.  Compare *Wyoming v. Houghton*, 526 U.S. 295 (1999).

Where a search of a car is based on the driver's consent to the search, such consent does not authorize search of items clearly identified as belonging to the passenger.  *United States v. Jaras*, 86 F.3d 383, 389 (5th Cir. 1996).  The scope of a consent is measured by objective reasonableness.  The issue of apparent authority to consent to an item turns in part upon the "nature of the container" to be searched.  Thus, "it is less reasonable for a police officer to believe that a third party has full access to a ... purse or a briefcase than, say, an open crate." *United States v. Basinski*, 226 F.3d 829, 834 (7th Cir.2000).  Thus, it is unreasonable for an officer to believe that a driver's consent to a general search of a vehicle includes the search of a purse that does not belong to the driver, but belongs to the passenger. *Marrs v. Tuckey*, 362 F.Supp.2d 927, 948 (E.D. Mich. 2005) (holding that driver possessed neither actual nor apparent authority to consent to the search of his passenger girl friend's purse);  *United States v. Welch*, 4 F.3d 761, 764 (9th Cir.1993) (holding that a driver's authority to consent to search of a rental car did not extend to the search of the passenger's purse).

**WHEREFORE**, the Ms. Hogan prays that all fruits of the illegal seizure, search and interrogations conducted November 23, 2004 be suppressed.

Respectfully submitted,

s/ Christine A. Freeman
**CHRISTINE A. FREEMAN**
Counsel for Ms. Salley Whaley Hogan
FEDERAL DEFENDERS
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail: Christine_Freeman@fd.org
TN Bar Code: 11892

**FEDERAL DEFENDERS**
**MIDDLE DISTRICT OF ALABAMA**
201 Monroe Street, Suite 1960
Montgomery, Alabama   36104
TEL:  (334) 834-2099
FAX:  (334) 834-0353

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Todd Brown, Esq. and Susan R. Redmond, Esquire, Assistant United States Attorneys, One Court Square, Suite 201, Montgomery, Alabama 36104.

<u>s/Christine A. Freeman</u>
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Ms. Hogan
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL: (334) 834-2099
FAX: (334) 834-0353
E-Mail: Christine_Freeman@fd.org